UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

———————————————————————

KEITH TAYLOR,

                    Plaintiff,

          v.

MICHAEL ASTRUE,
Commissioner of Social Security,

                  Defendant.

———————————————————————

**REPORT AND
RECOMMENDATION**

11-CV-411
(GTS/VEB)

## I. INTRODUCTION

In March of 2007, Plaintiff Keith Taylor applied for supplemental security income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he had been unable to work since May of 2005 due to various physical and psychological impairments.  The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff commenced this action by and through his attorneys, Lachman & Gorton, Peter A. Gorton, Esq., of counsel, seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 16).

II.          **BACKGROUND**

The relevant procedural history may be summarized as follows:

Plaintiff applied for SSI benefits and DIB under the Social Security Act on March 12, 2007, alleging disability beginning on May 17, 2005. (T at 85-86, 87-91, 92-94).[1]  The claims were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held in Binghamton, New York on July 10, 2009, before ALJ F. Patrick Flanagan.  (T at 28).  Plaintiff appeared *pro se* and testified.  (T at 32, 35-53). On December 18, 2009, ALJ Flanagan issued a written decision finding that Plaintiff was not disabled under the Social Security Act. (T at 6-27).  The ALJ's decision became the Commissioner's final decision on March 4, 2011, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

Plaintiff, by and through Attorney Gorton, timely commenced this action on April 14, 2011.  (Docket No. 1).  The Commissioner interposed an Answer on June 22, 2011. (Docket No. 8).  Plaintiff filed a Brief in support of his action on October 25, 2011. (Docket No. 13).  Defendant filed a Brief in opposition on December 2, 2011. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

For the reasons that follow, it is respectfully recommended that the Commissioner's motion be granted, Plaintiff's motion be denied, and that this case be dismissed.

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No. 9).

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

### III. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own

judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[3]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

---

[3]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

## B.   Analysis

### 1.   Commissioner's Decision

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2010, and that Plaintiff had not engaged in substantial gainful activity since May 17, 2005, the alleged onset date.   (T at 11).

The ALJ concluded that Plaintiff had the following impairments, which the ALJ considered "severe," as defined under the Act: coronary artery disease and polysubstance abuse (in partial remission). (T at 11-12).  The ALJ found that several impairments alleged by Plaintiff (i.e. degenerative disc disease, diabetes, hypertension, binaural external otitis,[4] depression, peripheral vascular disease, knee pain, restrictive airway disease, left wrist ganglion cyst) were not severe impairments.  (T at 12-15).

In addition, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 15-16).

---

[4]External otitis is "an inflammatory process of the external auditory canal." *Otitis Externa: A Practical Guide to Treatment and Prevention*, available at http://www.aafp.org/afp/2001/0301/p927.html (last accessed on July 19, 2012).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry up to 30 pounds; stand/walk for 6 hours in an 8-hour workday; and sit for 6 hours in an 8-hour workday. The ALJ determined that Plaintiff could understand, remember, and carry out simple instructions; made simple decisions; respond appropriately to supervision, co-workers, and usual work situations; and deal with changes in a routine, unskilled work setting. (T at 16-19).

The ALJ found that Plaintiff could perform his past relevant work as a parking lot attendant and delivery driver because those jobs did not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. (T at 20).

In the alternative, the ALJ also concluded that considering Plaintiff's age (44 years old as of the alleged onset date), education (limited), work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (T at 20-21).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, from May 17, 2005 (the alleged onset date) through December 18, 2009 (the date of the ALJ's decision), and was therefore not entitled to benefits. (T at 21-22).  As noted above, the ALJ's decision became the Commissioner's final decision on March 4, 2011, when the Appeals Council denied Plaintiff's request for review.  (T at 1-3).

## 2.    Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed.  Plaintiff offers five (5) principal arguments in support of his position.  First, Plaintiff contends that the ALJ erred by finding the impairments of degenerative disc disease, diabetes, hypertension,

6

binaural external otitis, depression, peripheral vascular disease, knee pain, restrictive airway disease, left wrist ganglion cyst to be non-severe.  Second, Plaintiff asserts that the ALJ improperly failed to consider the combined effects of his impairments.  Third, Plaintiff argues that the ALJ should have further developed the administrative record.  Fourth, Plaintiff contends that the ALJ's residual functional capacity assessment was flawed.  Fifth, Plaintiff challenges the ALJ's credibility determination.  This Court will address each argument in turn.

### a.   Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding, carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to

render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

In this case, the ALJ found Plaintiff's coronary artery disease and polysubstance abuse (in partial remission) to be severe impairments. (T at 11-12).  However, the ALJ considered several other impairments alleged by Plaintiff and found them to be non-severe. Plaintiff challenges the ALJ's finding with regard to the severity of several of his impairments.  The impairments at issue are discussed separately below.

### i.      Degenerative Lumbar Disc Disease

Plaintiff was diagnosed with chronic back pain and treated with prescription medication.  (T at 166, 178, 187, 446-47).  Plaintiff repeatedly complained of back pain and alleged that it prevented him from carrying groceries. (T at 109, 120, 127-29, 223, 227). Dr. James Naughten, the consultative examiner, opined that Plaintiff might need to be restricted from activities requiring mild to greater exertion with regard to lifting, carrying, and handling objects due to his cardiac status and lower spinal arthritis. (T at 283).

As noted above, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F. Supp. 50, 53 (S.D.N.Y.1995).  The ALJ's conclusion that Plaintiff's back pain caused no more than a minimal limitation with respect to his ability to perform work-related activities was supported by substantial evidence.

Plaintiff reported that he experienced "fair control" of his back pain with medication. (T at 178).  An x-ray in February of 2006 indicated "mild degenerative changes," straight leg raise was negative, and Plaintiff had "full range of motion on the spine." (T at 227).  A May 2008 MRI of the lumbrosacral spine was read as "normal" with "very minimal L4-5 bulging present." (T at 447).  Straight leg raising was also negative in May of 2008. (T at 447).  Dr. Kenneth T. Wong, Plaintiff's treating physician, opined in March of 2009 that Plaintiff could return to work with a 30-pound lifting restriction. (T at 358).  This evidence was adequate to support the ALJ's finding that Plaintiff's back pain caused no more than a minimal effect on his ability to perform basic work-related activities.

### ii.   Knee Pain

Plaintiff also complained of bilateral knee pain. (T at 230, 234, 281-83).  Plaintiff received physical therapy to address the pain. (T at 208, 228).  He also used a patellar stabilizing brace, activity modification, straight leg raising exercises, and over-the-counter anti-inflammatory medication. (T at 445).

The ALJ's finding that this condition was non-severe was supported by substantial evidence.  Plaintiff described his knee pain as "mostly morning stiffness," which improved "during the day with physical activity." (T at 234).  MRIs and x-rays of Plaintiff's knees were largely unremarkable. (T at 198, 244, 248, 249).

"Conflicts in evidence . . . are for the Commissioner to resolve. White v. Comm'r of Social Security, No. 06-CV-0564, 2008 WL 3884355, at *11 (N.D.N.Y. Aug. 18, 2008) (citing Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir.1983)). Where, as here, there are conflicts in the medical evidence, it is the ALJ's decision that controls as factfinder. Id. Where the Commissioner's decision "rests on adequate findings supported by evidence

having rational probative force, [the Court] will not substitute [its] judgment for that of the Commissioner." Id. (citing Veino v. Barnhart, 312 F.3d at 586).   Again, although the record here contains conflicting evidence, the evidence referenced by the ALJ is adequate to support his conclusion that Plaintiff's knee pain did not rise to the level of a severe impairment.

### iii.   Asthma

Plaintiff complained of shortness of breath related to humidity and strenuous activity. (T at 44, 49, 208, 210-11, 237, 420).  Dr. Naughten, the consultative examiner, opined that Plaintiff should avoid all known smoke, dust, and respiratory irritants due to asthma. (T at 283).

The ALJ's finding that Plaintiff's asthma was non-severe was supported by substantial evidence.  Multiple chest x-rays and pulmonary function tests were normal. (T at 174, 201, 227, 232, 366, 369, 372).  Clinical examination notes consistently described Plaintiff's lungs as "clear." (T at 193, 220, 318, 418).  Plaintiff testified that he treated his asthma through the use of an inhaler and that his breathing had improved since he quit smoking. (T at 44).

### iv.   Peripheral Vascular Disease and Diabetes

Plaintiff was diagnosed and treated for type II diabetes. (T at 178, 231).   He complained of foot pain, fatigue, and lower extremity numbness. (T at 204, 210-11).  Dr. Peter Ronan, who examined Plaintiff during a drug-related hospitalization, also diagnosed peripheral vascular disease, but described it as "asymptomatic." (T at 178).   No provider assessed any work-related limitations arising from either of these conditions and this Court

finds no reversible error as to this aspect of the ALJ's decision.

Moreover, even if the ALJ erred in finding these conditions (or any of Plaintiff's other impairments) non-severe, any such error(s) was harmless because the ALJ concluded that Plaintiff had established other impairments considered severe under the Act (namely, coronary artery disease and polysubstance abuse (in partial remission)) and continued with the sequential disability analysis.  See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error."); McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b.   Combined Effect of Impairments

If a claimant has multiple impairments, the combined effect of all impairments should be considered "without regard as to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523; 42 U.S.C. § 423(d)(2) (B).  SSR 96-

8p provides, in pertinent part, that in determining the claimant's residual functional capacity, "the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a 'not severe' impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do." Id.

As discussed above, the ALJ found that several of Plaintiff's impairments did not rise to the level of severe impairments. The ALJ specifically found that these conditions did not have more than a minimal effect on Plaintiff's ability to work "either individually or in combination." (T at 12). This finding was in accord with applicable law, as outlined above, and supported by substantial evidence. Although Plaintiff was diagnosed with and treated for these conditions, the record contains evidence of rational probative force sufficient to support the ALJ's conclusion that the conditions, even if considered in combination, did not impose more than a minimal limitation with regard to Plaintiff's ability to perform work-related activities.

Plaintiff also argues that the ALJ should have found that his impairments or combination of impairments met or medically equaled the impairments set forth in § 1.02 and 1.04 of the Listings. If a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled. Impairments listed in Appendix 1 of the

12

Regulations are "acknowledged by the [Commissioner] to be of sufficient severity to preclude" substantial gainful activity. Accordingly, a claimant who meets or equals a Listing is "conclusively presumed to be disabled and entitled to benefits." Dixon v. Shalala, 54 F.3d 1019, 1022 (2d Cir.1995); see 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.")

The claimant bears the burden of establishing that his or her impairments alone or in combination match a Listing or are equal in severity to a Listing.  See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

To show that a combination of impairments match a Listing, the claimant must show that his or her impairments in combination meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. Id.

The impairment of degenerative disc disease set forth at § 1.02 of the Listings requires a "gross anatomical deformity" with "signs of limitation of motion or other abnormal

motion of the affected joint(s)." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.02.  Plaintiff points

to no evidence in the record showing that these requirements have been satisfied in this

particular case.  The impairment set forth in § 1.04 of the Listings requires evidence of

nerve root compression with motor loss and sensory or reflex loss; spinal arachnoiditis,

resulting in the need to change position or posture more than once every 2 hours; or

lumbar spinal stenosis resulting in pseudoclaudication,[5] resulting in an inability to ambulate.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04.   Again, Plaintiff points to no evidence

establishing that these requirements have been met and the record is devoid of such

evidence.  Moreover, as outlined above, the evidence with regard to work-related limitations

imposed by Plaintiff's other impairments is lacking from the record, which undermines any

claim that Plaintiff's impairments satisfied § 1.04 (or any other impairment set forth in the

Listings), either alone or in combination.  As such, this Court finds no error with regard to

the ALJ.

### c.   Development of the Record

It is well-settled in this Circuit that in light of the "'essentially non-adversarial nature

of a benefits proceeding,'" ALJs have an affirmative duty to develop the record. Pratts v.

Chater, 94 F.3d 34, 37 (2d Cir.1996) (quoting Echevarria v. Secretary of Health and Human

Services, 685 F.2d 751, 755 (2d Cir.1982)); see also Shaw v. Chater, 221 F.3d 126, 131

(2d Cir.2000); Perez v. Chater, 77 F.3d 41, 47 (2d Cir.1996).

Plaintiff, who appeared *pro se* at the administrative hearing, argues that the ALJ

should have further developed the medical record by requesting a functional assessment

---

[5]"Pseudoclaudication" refers to pain in the legs, feet, and buttock caused by narrowing of the spinal canal. *Symptoms of Spinal Stenosis*, available at http://www.spinalstenosis.net/symptoms%20of%20spinal%20stenosis.htm (last accessed June 13, 2012).

from Joe Brunt (a treating physician's assistant) or Dr. Ronan, who treated Plaintiff on two occasions.  In the alternative, Plaintiff suggests the ALJ should have ordered an orthopedic consultative examination.

The ALJ has discretion to order a consultative examination to further develop the evidentiary record.  See Serianni v. Astrue, No. 6:07–CV–250, 2010 WL 786305, *5 (N.D.N.Y. Mar. 1, 2010) (citing Hughes v. Apfel, 992 F.Supp. 243, 248 (W.D.N.Y.1997) (citing 20 C.F.R. § 404.1517))).  "Several courts have held . . . that in fulfilling the duty to conduct a full and fair inquiry, an ALJ is required to order a consultative examination where the record establishes that such an examination is necessary to enable the ALJ to render a decision." Id. (citations omitted).

Generally, the ALJ should order a consultative examination when "[a] conflict, inconsistency, ambiguity or insufficiency in the evidence must be resolved." Id. (quoting Matejka, 386 F.Supp.2d at 209) (other citations omitted); see also Cruz v. Shalala, No. 94 Civ. 0929, 1995 WL 441967, *5 (S.D.N.Y. July 26, 1995).  However, the ALJ "is not obligated to send a litigant for a consultative examination if the facts do not warrant or suggest the need for such an examination." Id. (citing Cruz, 1995 WL 441967, at *5).

In the present case, the medical record is extensive and includes treatment notes from numerous providers, along with x-rays, MRI results, and clinical findings.   A consultative examination was performed by Dr. Naughten, which included an assessment of Plaintiff's musculoskeletal system. (T at 282).   Dr. Ronan treated Plaintiff twice, describing his chronic back pain as being under "fair control" with medication, his peripheral vascular disease as "asymptomatic," and his episodes of chest pain as "atypical and not exertionally related." (T at 178).  Dr. Wong, Plaintiff's treating cardiologist, rendered an

15

opinion regarding his ability to return to work, finding that Plaintiff could return to work with a 30-pound lifting restriction only. (T at 358).

Given the extensive nature of the medical record, this Court finds that the ALJ properly exercised his discretion in finding that further development was unnecessary. Moreover, with regard to the suggestion that the ALJ was required to re-contact Mr. Brunt, a physician's assistant is not considered a "medical source" under the Social Security Regulations.   There are five categories of "acceptable medical sources." 20 C.F.R. § 404.1513 (a). Physician's assistants are not included among the "acceptable medical sources" and their opinions are not entitled to any special weight.   Rather, physician's assistants are listed among the "other medical sources," whose opinion *may* be considered as to the severity of the claimant's impairment and ability to work. 20 C.F.R. § 416.913 (d)(1).   The Second Circuit has stated that "the ALJ has discretion to determine the appropriate weight to accord the [other source's] opinion based on all the evidence before him." Diaz v. Shalala, 59 F.3d 307, 313-14 (2d Cir.1995).   Accordingly, this Court finds no error with regard to this aspect of the ALJ's decision.

### d.    Residual Functional Capacity

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999).   "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a

16

claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).  An RFC finding will be upheld when there is substantial evidence in the record to support each requirement listed in the regulations. LaPorta v. Bowen, 737 F.Supp. 180, 183 (N.D.N.Y.1990).

In this case, the ALJ concluded that Plaintiff retained the RFC to lift/carry up to 30 pounds, and stand/walk/sit for about 6 hours in an 8-hour workday. (T at 16).  Plaintiff challenges the ALJ's RFC assessment, arguing that it does not adequately account for his low back pain, knee pain, and other ailments.

This Court finds that the ALJ's RFC assessment is supported by substantial evidence.  Dr. Wong, Plaintiff's treating cardiologist, released Plaintiff to work in March 2009, with a single restriction - that Plaintiff lift nothing over 30 pounds. (T at 358). Although Plaintiff contends that Dr. Wong's assessment was related solely to the limitations imposed by his cardiac condition, Plaintiff's other impairments, analyzed either in combination or individually, were properly found to have no more than a minimal impact on his ability to perform basic work-related activities (as discussed above).  As such, the limitations imposed by his cardiac condition were the only material limitations at issue.  The ALJ properly placed great weight on the opinion of Plaintiff's treating physician in this regard.  Further, while Dr. Wong treated Plaintiff for his cardiac impairment, there is no evidence that Dr. Wong was unaware of Plaintiff's other ailments when he rendered his decision.  Moreover, the treatment notes generally documented improvement in Plaintiff's condition following bypass surgery. (T at 359-60, 421).

Dr. Naughten, the consultative examiner, also provided some support for the ALJ's

17

decision.  Although the ALJ did not accept Dr. Naughten's conclusion that Plaintiff was restricted from activities requiring mild to great exertion in terms of lifting and carrying (because that finding was contradicted by treating physician Wong's assessment), Dr. Naughten also found only a moderate limitation as to walking and no limitation as to sitting or standing. (T at 283).  These findings provide some additional support for the ALJ's RFC assessment.  As noted above, this Court is not free to substitute its judgment for the ALJ's. Where, as here, the ALJ's conclusion is supported by evidence having rational probative force, that conclusion must be sustained.

### e.   Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and its limitations, he or she must be explicit in the reasons for rejecting the testimony. See Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis

18

v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;
4.   The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.   Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.   Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.   Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No.

19

7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that his statements concerning the intensity, persistence, and limited effects of the symptoms were not entirely consistent with the medical record. This Court finds the ALJ's credibility assessment supported by substantial evidence. Plaintiff's claims of disability arising from his cardiac condition are contradicted by his cardiologist, who released Plaintiff to work with a lifting restriction of 30 pounds. (T at 358). His chest pain was described as "atypical," "not exertionally related," and responsive to Nitroglycerin spray. (T at 178). His back pain was under "fair control" with medication and his peripheral vascular disease was "asymptomatic." (T at 178). Plaintiff described an ability to perform a wide variety of activities of daily living, including cooking, cleaning, doing laundry, and fishing. (T at 49-50, 278, 281).

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel,

177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard.  However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983).  Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

The Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.


## IV. CONCLUSION

After carefully reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ thoroughly examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers, the consultative examiners, and the non-examining consultants, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. This Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that

the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   July 20, 2012

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

July 20, 2012

Victor E. Bianchini
United States Magistrate Judge